**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FELIX ACON-CHEN, *Plaintiff*, v. SEAN P. DUFFY, *Secretary of Transportation*, *Defendant.* | Civil Action No. 24-1529 (RDM) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Felix Acon-Chen, proceeding *pro se*, brings this suit against the Secretary of Transportation alleging discriminatory treatment during his employment with the Federal Aviation Administration ("FAA"). The Court previously dismissed many of Plaintiff's claims with prejudice, *see* Dkt. 56 ("*Acon-Chen II*"), but permitted Plaintiff to file an amended complaint with respect to his claims challenging a letter of expectation ("Reprimand Letter") from a supervisor and his requests for records under the Privacy Act, 5 U.S.C. § 522a. *Id.* at 19–20. Plaintiff has now filed a second amended complaint, *see* Dkt. 57 (2d Am. Compl.), along with three motions asking the Court to reconsider its prior decision, *see* Dkts. 58, 59, 69. Defendant has once again moved to dismiss Plaintiff's complaint. *See* Dkt. 65.

For the reasons that follow, the Court will **DENY** Plaintiff's three motions for reconsideration and will **GRANT** in part and **DENY** in part Defendant's motion to dismiss.

**I. BACKGROUND**

The Court previously described the background to this suit in its opinion dismissing Plaintiff's first amended complaint. *See Acon-Chen II* at 1–9. The Court will briefly summarize

the procedural history before turning to the allegations in Plaintiff's latest complaint, *see* Dkt. 57 (2d Am. Compl.), which the Court accepts as true for the purpose of resolving the pending motion to dismiss, *see Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015).

Plaintiff filed his original complaint in May 2024, naming the Secretary of Transportation, the Attorney General, and the U.S. Attorney for the District of Columbia as defendants and appearing to raise claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, for national origin discrimination.  Dkt. 1 at 3–4, 8 (Compl.).  The Court dismissed Plaintiff's original complaint, which spanned hundreds of pages of allegations and attached exhibits, "on the grounds that it [was] excessively long, rambling, disjointed, incoherent, [and] full of irrelevant and confusing material, in violation of Federal Rules of Civil Procedure 8 and 10." *Acon-Chen v. Buttigieg*, No. 24-cv-1529, 2024 WL 4416943, at *1 (D.D.C. Oct. 5, 2024) ("*Acon-Chen I*") (second alteration in original) (citation modified).  The Court afforded Plaintiff an opportunity to file an amended complaint that complied with the Federal Rules of Civil Procedure, *id.* at *3, and Plaintiff filed an amended complaint in November 2024, *see* Dkt. 42 (Am. Compl.).  That complaint also named the Secretary of Transportation, the Attorney General, and the U.S. Attorney for the District of Columbia as defendants, *id.* at 2 (Am. Compl. ¶¶ 2–4), and appeared to raise claims for, among other things, violations of Title VII, the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, the Privacy Act, and the Fifth Amendment, *id.* at 28, 34 (Am. Compl. ¶¶ 156–57, 178).

Defendants moved to dismiss Plaintiff's amended complaint, *see* Dkt. 45, and the Court granted that motion in *Acon-Chen II*.  Although Plaintiff had not "clearly identif[ied] his causes of action," the Court understood him to be asserting claims for national origin discrimination and hostile work environment under Title VII and the DCHRA based on his Costa Rican national

origin, for "failure to remedy national origin discrimination and retaliation" under both statutes, for a failure to grant access to records under the Privacy Act, for unfair labor practices under the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. § 7101 *et seq.*, and for violations of his Fifth Amendment right to due process and equal protection. *Acon-Chen II* at 7–8 (citation modified).

The Court dismissed the DCHRA claims on sovereign immunity grounds. *Id.* at 10–11. As for the Title VII claims, the Court dismissed the claims against the Attorney General and the U.S. Attorney because neither was the "head of the department or agency being sued," *id.* at 11 n.4 (citation modified), and concluded that Plaintiff had failed timely to exhaust any claim challenging any discrete act of discrimination that occurred prior to January 27, 2023, *id.* at 11. The Court explained that Title VII and its implementing regulations require a federal employee to initiate contact with the Equal Employment Opportunity ("EEO") office within 45 days of an allegedly discriminatory act. *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). Plaintiff did not initiate contact with the EEO office until March 13, 2023, rendering untimely any challenge to an act of discrimination that occurred more than 45 days earlier. *Id.* The only identified incident that occurred within that timeframe was the Reprimand Letter issued on February 1, 2023, criticizing Plaintiff for using his work email account to conduct union business and cautioning him not to do so again. *Id.* at 5, 12. The Court also rejected Plaintiff's attempt to connect the Reprimand Letter to a hostile work environment, which would have allowed Plaintiff to challenge an entire course of conduct so long as a single contributory act occurred within the 45-day window. *Id.* at 12 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). The Court determined that Plaintiff's other alleged incidents of discrimination were "insufficiently linked to

3

the Reprimand Letter" and failed to state a claim for a hostile work environment regardless. *Id.* at 12–13.

Proceeding to the merits of the Title VII claim relating to the Reprimand Letter, the Court held that Plaintiff had "fail[ed] to raise a plausible inference of discrimination." *Id.* at 14. Although Plaintiff alleged that another (non-Costa Rican) FAA employee, Zachary Cammarano, had not received a similar letter despite also having used his FAA email for union activities, Plaintiff had not sufficiently alleged that Cammarano (who had a different supervisor and had not been accused of repeated misconduct) was similarly situated to Plaintiff, and, in any event, Plaintiff seemed to acknowledge elsewhere in his complaint that Cammarano was, in fact, subjected to discipline. *Id.* at 14–16. The Court also dismissed any claim that the Reprimand Letter was retaliatory because Plaintiff's complaint "[did] not contain any non-conclusory allegations in support of th[at] theor[y]." *Id.* at 14 n.5.

In addition, the Court dismissed Plaintiff's claim under the Privacy Act for failure to comply with that statute's administrative exhaustion requirements. *Id.* at 16–17 (citing *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 41–42 (D.D.C. 2022)). Plaintiff's separate claims under the FSLMRS also failed because Congress had vested the Federal Labor Relations Authority with exclusive jurisdiction to adjudicate such claims. *Id.* at 17–18. Finally, the Court dismissed Plaintiff's constitutional claims under the Fifth Amendment as "the D.C. Circuit 'has repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII.'" *Id.* at 18 (quoting *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985)).

Having granted Defendants' motion to dismiss Plaintiff's complaint in its entirety, the Court allowed Plaintiff "one additional opportunity to file an amended complaint." *Id.* at 19.

The Court had dismissed many of Plaintiff's claims with prejudice, including his DCHRA claim, his Title VII claims against the Attorney General and the U.S. Attorney, and his untimely Title VII claims against the Secretary of Transportation. *Id.* at 19–20. But the Court authorized Plaintiff to "file an amended complaint, not to exceed 30 pages, with respect to the Reprimand Letter and his Privacy Act" claims. *Id.* The Court cautioned Plaintiff, however, not to "reassert any of the claims" that the Court had "dismissed with prejudice." *Id.* at 19.

Plaintiff filed his second amended complaint in August 2025. *See* Dkt. 57 (2d Am. Compl.). This time, he names the Secretary of Transportation as the sole Defendant and includes the following allegations: Plaintiff, an engineer with the FAA, has been subjected to "routine[] . . . national origin discrimination acts of intimidation, harassment, disparate treatment, and retaliation," including "adverse disparate treatment regarding pay, assigned work, training, access to career advancement information, and promotions as retaliation for reporting national origin-based discrimination within [the] FAA." *Id.* at 2 (2d Am. Compl. ¶ 9). Plaintiff is "the only naturalized US employee of Asian/Latino-Costa Rican de[s]cent" within his workgroup. *Id.* (2d Am. Compl. ¶ 14). He began reporting to his current supervisor, Vincent Telfer, in November 2021. *Id.* at 4 (2d Am. Compl. ¶ 13). Plaintiff met with Telfer on September 19, 2022, to ask for a promotion and for "career advancement information," but Telfer responded by suggesting that Plaintiff seek another job and reducing his workload. *Id.* at 5 (2d Am. Compl. ¶¶ 15–16).

On February 1, 2023, Telfer issued Plaintiff the Reprimand Letter, which addressed his alleged inappropriate use of his FAA email and government-provided equipment for union activities. *Id.* at 3–5 (2d Am Compl. ¶¶ 11, 17). Plaintiff denies having misused his work email, alleging that the relevant emails were sent from his *personal* email account and that Jim

Kabbara, another FAA employee, "altered" and sent misleading copies of those emails to FAA leadership to make it appear that they were sent using Plaintiff's FAA email address. *Id.* at 5–7 (2d Am. Compl. ¶¶ 19, 22). In an attachment to one of his later filings in this case, Plaintiff includes a series of emails purportedly sent from his personal "hotmail.com" email account to various FAA employees, including an email dated January 5, 2023, 8:57 a.m., with the subject line "Important - Time Sensitive - Information to Leave Local 1653," which included guidance on how FAA employees could prevent union dues from being withdrawn from their paychecks. Dkt. 69-1 at 2–9. He also includes a copy of an identical email purportedly sent at the same time from Plaintiff's FAA email address, which Jim Kabbara apparently forwarded (presumably, Plaintiff alleges, after having doctored it to make it appear as if Plaintiff had sent it from his work email) to several FAA officials, and which Plaintiff obtained in response to a FOIA request. *Id.* at 12–14.

Plaintiff also filed a copy of the Reprimand Letter as a separate exhibit. *See* Dkt. 63. The letter, dated January 30, 2023, and sent to Plaintiff by Telfer, states that "[t]he purpose of this letter is to caution [Plaintiff] about your behavior and place you on notice of my expectations for your behavior in the future." *Id.* at 3. It refers to an email sent by Plaintiff "to employees concerning union dues" on January 6, 2023, *id.*, which, according to Plaintiff, is the email discussed above—although he contends that he sent the email from his personal email address on January 5, 2023, *see* Dkt. 57 at 5–7 (2d Am. Compl. ¶¶ 19, 22). After citing FAA policies related to the use of the internet and government technology, which forbade "broadcasting inappropriate or unsolicited messages," the letter concludes with a warning that Telfer would "not tolerate this type of behavior in the future, as we have had this discussion on multiple occasions," and that "any further violations of this nature will be considered [a] failure to follow

6

my instructions and may result in disciplinary action up to and including removal from the Federal service." Dkt. 63 at 3–4. Then, in bolded and italicized font, the letter emphasizes that it "is not a disciplinary action" and, thus, "will not be placed in [Plaintiff's] Official Personnel Folder." *Id.* at 4. Notwithstanding the Reprimand Letter's suggestions to the contrary, Plaintiff alleges that FAA employees were, in practice, routinely permitted to use their work emails for protected union activity. Dkt. 57 at 8–9 (2d Am. Compl. ¶¶ 24–27).

Plaintiff filed an EEO complaint with the FAA's Office of Civil Rights on March 13, 2023. *Id.* at 2 (2d Am. Compl. ¶ 8). During the EEO process, Plaintiff argued that he had been "singled out" and "threaten[ed] [with] disciplinary action" even though other FAA employees routinely engaged in similar behavior. *Id.* at 10 (2d Am. Compl. ¶ 31). Plaintiff alleges that Telfer and other FAA leaders routinely perjured themselves when responding to his EEO complaint. *Id.* at 10–13 (2d Am. Compl. ¶¶ 32–43). The Department dismissed Plaintiff's EEO complaint in February 2024, *id.* at 14 (2d Am. Compl. ¶ 47), resulting in this suit.

As with his prior complaints, Plaintiff's latest filing is difficult to parse and does not clearly identify his asserted causes of action. In addition to Title VII claims for national origin discrimination based on the Reprimand Letter, *id.* at 17 (2d Am. Compl. ¶ 60), Plaintiff refers to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, the Privacy Act, various criminal statutes, and other statutory provisions, *id.* at 21 (2d Am. Compl. ¶ 74), and the Fourth Amendment, *id.* at 6–7 (2d Am. Compl. ¶ 21). Adding some clarity in his opposition to the latest motion to dismiss, Plaintiff discusses claims for discrimination, retaliation, and hostile work environment (under Title VII) as well as a Privacy Act claim and constitutional claims under the Fourth and Fifth Amendments. *See generally* Dkt. 71.

Plaintiff followed the second amended complaint with two motions seeking to "set aside" the Court's dismissal of his first amended complaint in *Acon-Chen II*. *See* Dkts. 58, 59. Defendant then moved to dismiss the second amended complaint in its entirety, *see* Dkt. 65, and Plaintiff opposed the motion, *see* Dkt. 71. Plaintiff also filed a third motion seeking to revisit the Court's decision in *Acon-Chen II*. *See* Dkt. 69. Those four motions are now before the Court.

## II. LEGAL STANDARD

Rule 54(b) permits a district court to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a [final] judgment." Fed. R. Civ. P. 54(b). "The precise standard governing Rule 54(b) reconsideration is unsettled in [this] Circuit." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). "[T]he judicial interest in finality," however, "disfavors reconsideration," *Montgomery v. IRS*, 356 F. Supp. 3d 74, 79 (D.D.C. 2019), and precludes disappointed parties from simply claiming the right to a "mulligan." Rather, the moving party bears the burden of demonstrating that the interests of justice or other "good reasons" warrant reconsideration. *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005). Such reasons might include "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the [Court's previous] order." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018) (citation modified). Good reasons do not, however, include simply rearguing "facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (three-judge panel).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

8

12(b)(6).  To survive a motion brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  A court must consider the whole complaint, accepting factual allegations as true and construing all reasonable inferences in favor of the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But a court "need not accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint."  *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  In applying these standards, moreover, courts must be mindful that *pro se* filings are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified).

### III.  ANALYSIS

#### A.    Motions for Reconsideration

The Court begins with Plaintiff's three motions seeking reconsideration of the Court's decision in *Acon-Chen II*.  *See* Dkts. 58, 59, 69.  The first two of those motions are captioned as motions for relief from judgment filed under Federal Rule of Civil Procedure 60(b).  Dkt. 58 at 1; Dkt. 59 at 1.  Rule 60(b), however, applies to a "a final judgment, order, or proceeding" of the Court.  Fed. R. Civ. P. 60(b).  As Plaintiff recognized in his third motion, Dkt. 69 at 1, *Acon-Chen II* was not a final judgment; rather than terminating the case, the Court invited Plaintiff to file a second amended complaint, *see Acon-Chen II* at 19–20.  The Court will, accordingly, construe all three motions as seeking reconsideration under Federal Rule of Civil Procedure 54(b), which applies to a decision that, like *Acon-Chen II*, "adjudicates fewer than all the claims" at issue and "does not end the action."  Fed. R. Civ. P. 54(b).

On the merits, none of Plaintiff's motions offer any reason to question the Court's decision in *Acon-Chen II*, let alone satisfy the high standard for reconsideration under Rule 54(b). Several of Plaintiff's arguments simply misapprehend the Court's prior decision. Plaintiff, for example, suggests that *Acon-Chen II* somehow "dismissed Plaintiff's background evidence" of his alleged treatment at the FAA "with prejudice." Dkt. 69 at 9; *see also* Dkt. 58 at 2. It is unclear what Plaintiff means by this, as the case remains at the pleading stage and the Court has yet to consider what evidence to admit if the case were to advance to trial. Nothing in *Acon-Chen II*, moreover, forbade Plaintiff from including allegations relating to his previous experiences at the FAA in his second amended complaint, to the extent they are plausibly relevant to any timely Title VII or Privacy Act claim he might assert. *See Reddish v. WMATA*, No. 22-cv-2658, 2026 WL 380766, at *13 (D.D.C. Feb. 11, 2026) (noting that a plaintiff may "invok[e]" prior instances of alleged discrimination "as relevant background or as evidence that her later treatment was attributable to invidious motives" even if a claim regarding those events would be untimely). The Court will, in any event, consider all of the allegations in Plaintiff's most recent complaint, including his discussion of any prior alleged incidents of discrimination, in assessing whether Plaintiff has stated a claim for relief arising from the Reprimand Letter (or under the Privacy Act). That does not, however, call into question the Court's prior decision to dismiss with prejudice any untimely Title VII claims contesting previous incidents that Plaintiff did not exhaust. *See Acon-Chen II* at 19.

Plaintiff also seeks reconsideration of *Acon-Chen II*'s dismissal of his hostile work environment claim linked to the Reprimand Letter. Dkt. 69 at 3–4. But *Acon-Chen II* correctly determined that Plaintiff had not alleged that the Reprimand Letter was "part of the same actionable hostile environment claim," *Acon-Chen II* at 12 (quoting *Baird v. Gotbaum*, 662 F.3d

1246, 1251 (D.C. Cir. 2011)), as Plaintiff's other allegations, which concerned "increased workload, pay discrimination, [and] denial of career advancement . . . [that] were perpetrated by at least three different managers over nearly ten years," *id.*  Despite Plaintiff's arguments to the contrary, *see* Dkt. 69 at 3–4, a private letter cautioning an employee about improper use of work email accounts does not "involve the same type of employment action" as the denial of a leave request or a failure to promote, and does not rise to the level of the type of "severe or pervasive" "intimidation, ridicule, [or] insult" necessary to transform discrete allegations of discrimination into a continuing hostile work environment, *Acon-Chen II* at 12–13 (citation modified).  A plaintiff may not use allegations of a hostile work environment merely to "bootstrap" discrete claims that were not exhausted in a timely manner into a timely hostile work environment claim, *Dudley v. WMATA*, 924 F. Supp. 2d 141, 165 (D.D.C. 2013), unless the claims "are adequately linked into a coherent hostile environment claim," *Baird*, 662 F.3d at 1251; *see also Morgan*, 536 U.S. at 127 (O'Connor, J., concurring in part and dissenting in part); *Boone v. MountainMade Found.*, 64 F. Supp. 3d 216, 240 (D.D.C. 2014) ("[T]his jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of [discrimination] into a broader hostile work environment claim." (citation modified)).

Here, the fact that a few FAA human resources officials were allegedly involved in multiple incidents (separated by many years) does not alter the analysis.  *See* Dkt. 69 at 3–4.  Nor does Plaintiff's (largely conclusory) assertion that all of the incidents were individually motivated by hostility to his national origin.  *See id.*  At most, that would suggest that each of the incidents, standing alone, could support a Title VII claim challenging distinct, discrete acts of discrimination, had Plaintiff timely exhausted those claims.  Finally, Plaintiff has not, in any event, cleared the high bar to allege a hostile work environment linked to the Reprimand Letter.

That letter, which criticizes his use of his workplace email without imposing any consequences, "do[es] not show that Plaintiff was subjected to 'discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.'" *Acon-Chen II* at 13 (citation modified) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)); *see* Dkt. 63 at 3–4.

Plaintiff's other arguments are foreclosed by binding precedent. Plaintiff first argues that the Court erred in dismissing his Fifth Amendment due process claim related to the government's violation of his employee rights as outlined in his collective bargaining agreement. Dkt. 58 at 3. As the Court explained in *Acon-Chen II*, however, "the D.C. Circuit 'has repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII.'" *Acon-Chen II* at 18 (quoting *Boorstin*, 751 F.2d at 1415). Nothing in Plaintiff's motions for reconsideration disputes that his "constitutional claims are grounded in the same incidents and theories as his Title VII claims." *Id.* And even if Plaintiff raised due process claims "separate from the allegations of discrimination, harassment, and retaliation underlying [his] Title VII claims," *Kittner v. Gates*, 708 F. Supp. 2d 47, 54 (D.D.C. 2010), those claims would be separately preempted by the Civil Service Reform Act's ("CSRA") "comprehensive system for reviewing personnel action taken against federal employees," *id.* at 55 (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). The same is true for Plaintiff's First and Fourth Amendment claims arising out of the Reprimand Letter.[1]

---

[1] Plaintiff has also failed to state a plausible claim for a First or Fourth Amendment violation in any event. The First Amendment does not prevent the government as employer from disciplining employees for "speech that has some potential to affect [its] operations," such as an unwanted mass communication sent to FAA employees at their workplace emails that apparently used FAA equipment and an FAA email account. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Nor does Plaintiff plausibly allege any specific facts supporting his contention that the

Dkt. 58 at 3–4; *see Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 12 (2012) (The CSRA

administrative scheme preempts "claims that an agency took adverse employment action in

violation of an employee's First or Fourth Amendment rights.").  Finally, Plaintiff's arguments

that the doctrine of sovereign immunity is incompatible with foundational constitutional

principles, *see generally* Dkt. 59, are equally meritless, *see Burford v. Yellen*, 246 F. Supp. 3d

161, 181 (D.D.C. 2017).

The Court will therefore deny Plaintiff's motions for reconsideration.

**B.      Motion to Dismiss**

1.      *Title VII*

a.  Discrimination

Turning to the motion to dismiss, Plaintiff alleges that the Reprimand Letter

discriminated against him on the basis of his national origin in violation of Title VII.  Dkt. 57 at

20 (2d Am. Compl. ¶ 69–70).  To assert a claim for discrimination, Plaintiff must allege "that

(1) he is a member of a protected class, (2) he suffered an adverse employment action, and

(3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Sessoms*, 774

F.3d 1016, 1022 (D.C. Cir. 2014) (citation modified).

Defendant first argues that the Reprimand Letter, even if discriminatory, does not amount

to an actionable adverse employment action.  Dkt. 65 at 9–13.  Title VII prohibits any

discriminatory "personnel action[] affecting" a federal employee such as Plaintiff.  42 U.S.C.

§ 2000e-16(a).  This differs from the language applicable to employers in the private sector,

---

FAA learned about his email through an unlawful search; to the contrary, Plaintiff's own exhibits
show that the email was forwarded to FAA leadership by one of the recipients, Dkt. 69-1 at 12–
14, and Plaintiff's second amended complaint lacks any factual allegations plausibly
controverting his own exhibits, *see* Dkt. 57 (2d Am. Compl.).

which bars discrimination "with respect to [the employee's] compensation, terms, conditions, or privileges of employment." *Id.* § 2000e-2(a). In Defendant's view, the statute's coverage in public sector cases is limited to actions such as appointments, promotions, or reassignments. Dkt. 65 at 10 (citing 5 U.S.C. § 2302(a)(2)(A)). As Defendant explains, this more limited reach tracks the definition of "personnel action" found in the CSRA, and the Supreme Court held in *Babb v. Wilkie*, 589 U.S. 399 (2020), that the CSRA definition of "personnel action" is "consistent with the term's meaning in general usage," *id.* at 405. Although *Babb* addressed a claim brought under the Age Discrimination in Employment Act ("ADEA"), Defendant notes that "the federal-sector provisions of the [ADEA] . . . parallel those of Title VII." Dkt. 65 at 10.

Notwithstanding *Babb*'s analysis and the fact that the provision of Title VII prohibiting federal-sector employment discrimination differs from the language prohibiting private-sector employment discrimination, the D.C. Circuit and this Court have repeatedly held that Title VII's "personnel actions" provision covering federal employees is coextensive with the statute's provision covering private-sector (and state/local-government) employees. *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *see also Bain*, 648 F. Supp. 3d at 54 & n.12 (collecting cases). Nothing in *Babb*, which dealt with a different statute, authorizes this Court to depart from the D.C. Circuit's construction of Title VII.[2] *See Phelan v. Noem*, No. 24-cv-939, 2025 WL 2732749, at *7 (D.D.C. Sep. 25, 2025) (collecting cases).

Accepting, then, that Plaintiff is entitled to the same protections under Title VII as any other employee, the question is whether he experienced "some harm respecting an identifiable

---

[2] *Babb*'s discussion of the scope of "personnel actions" covered by the ADEA was largely *dicta* in any event, as the question before the Supreme Court in that case concerned the ADEA's causation standard rather than whether the plaintiff had experienced a qualifying personnel action. 589 U.S. at 404–05.

term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).  It is unclear that the Reprimand Letter, standing alone, satisfies even this expansive standard.  Before *Muldrow*, decisions in this district frequently (although not universally) held that letters of reprimand that are "not abusive and d[id] not lead to disciplinary action" do not amount to adverse employment actions under Title VII.  *Bell v. Fudge*, No. 20-cv-2209, 2022 WL 4534603, at *6 (D.D.C. Sep. 28, 2022) (collecting cases).  The Reprimand Letter by its terms was not a disciplinary action and only warned Plaintiff against continuing to use his FAA email address or FAA-provided equipment to send union-related messages.  Dkt. 63 at 3–4.  Plaintiff does not allege that the letter had any effect on his employment other than threatening future discipline if he continued to violate FAA policy.

Construing his complaint generously, however, Plaintiff does allege that the letter affected the terms and conditions of his employment by imposing an absolute restriction on his ability to engage in union-related communications using FAA-furnished equipment or his FAA email account, even as other FAA employees did not face these restrictions.[3]  Dkt. 57 at 3, 10 (2d Am. Compl. ¶¶ 10, 31).  Even if the letter does not itself represent an actionable adverse employment action, a policy that forbade Plaintiff from using his work computer or email account for union business while other employees were not so restricted would likely affect a term or condition of employment, as those terms are expansively understood in Title VII cases. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (emphasizing that Congress intended Title VII to cover "the entire spectrum of disparate treatment . . . in

---

[3] Plaintiff's second amended complaint also includes conclusory allegations asserting that the letter harmed his reputation.  But he fails to explain how the cautionary letter did so and, even more importantly, fails to explain how criticism *alone* (even if misplaced) could have affected the terms or conditions of his employment for purposes of Title VII.  *See* Dkt. 57 at 3–4 (2d Am. Compl. ¶ 11).

employment" (citation modified)). At this early stage of the proceeding, and construing Plaintiff's second amended complaint liberally, the Court concludes that he has alleged that he faced particularly strict limitations on his ability to use FAA equipment and email for union activity.

The next question, then, is whether the FAA's alleged restriction of Plaintiff's ability to engage in union activities using his work email gives rise to an inference of discrimination. Plaintiff's second amended complaint offers at least one plausible basis for inferring that the Reprimand Letter, and the associated restriction on his use of his FAA email, was motivated by Plaintiff's national origin in violation of Title VII:  Plaintiff alleges that other FAA employees, who did not share his national origin, were not so constrained. Dkt. 57 at 8, 16 (2d Am. Compl. ¶¶ 24, 55). "One well-accepted way for a plaintiff to establish a reasonable inference of invidious bias without direct evidence of discrimination is to demonstrate dissimilar treatment of a similarly situated comparator without the protected characteristic." *Johnson v. Georgetown Univ.*, __ F. Supp. 3d __, No. 25-cv-1540, 2026 WL 879522, at *12 (D.D.C. Mar. 31, 2026) (citation modified). At the pleading stage, a plaintiff need not allege facts sufficient to show that his employment situation was "nearly identical" to the putative comparators, but need only "plead enough facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of his [national origin]." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). The standard is necessarily contextual, but "it cannot be enough to simply allege that the plaintiff was treated differently from a 'similarly situated' comparator, without additional allegations showing the comparators are in fact 'similarly situated' in some meaningful respect." *Id.* at 531.

The only putative comparator mentioned in Plaintiff's second amended complaint is Jim Kabbara—the same FAA employee who, Plaintiff alleges, modified Plaintiff's personal email messages to make them appear as if they were sent from his FAA work email. Dkt. 57 at 5–6 (2d Am. Compl. ¶ 19). Plaintiff alleges that Kabbara, who is Caucasian and not of Costa Rican origin, was permitted "routinely [to] use his FAA email account and [government-provided equipment] to: (a) conduct Union business, (b) illegally campaign for the Local election, and (c) broadcast inappropriate and unsolicited messages across the FAA that verbally abused, harassed, humiliated, and discredited Union members he disliked or disagreed with."[4] *Id.* at 8 (2d Am. Compl. ¶ 24). He further alleges that when another FAA employee, Zachary Cammarano, complained about Kabbara's use of his FAA email for union activities, the FAA determined that the agency was not permitted to interfere in union business by limiting Kabbara's activities. *Id.* (2d Am. Compl. ¶ 25). In exhibits attached to his opposition to the motion to dismiss, Plaintiff includes seemingly union-related emails sent by Kabbara (and others) from their FAA emails, Dkt. 71 at 19–24, and a signed affidavit from Cammarano stating that union members routinely use their FAA emails and government computers for union business, *id.* at 28 (Cammarano Aff. ¶ 16). The second amended complaint does not include additional factual allegations about Kabbara's job responsibilities or use of his workplace email,

---

[4] Plaintiff's second amended complaint does not specify Kabbara's national origin, although it does allege that Plaintiff was "the only Asian/Latino-Costa Rican naturalized US citizen within his workgroup," Dkt. 57 at 2 (2d Am. Compl. ¶ 9), but Plaintiff does state, in an (unauthorized) sur-reply in opposition to the pending motion to dismiss, that Kabbara is not of Costa Rican descent, Dkt. 74 at 3. Ordinarily such a contention, made outside the pleadings, would not be considered in resolving whether Plaintiff had stated a plausible claim to relief. The D.C. Circuit, however, has held that, when dealing with a *pro se* plaintiff, a district court must "consider[] supplemental material filed by a *pro se* litigant in order to clarify the precise claims being urged—including facts set forth in a plaintiff's opposition to a motion to dismiss." *Naz v. Wright*, 177 F.4th 1242, 1246 (D.C. Cir. 2026) (citation modified).

17

although he is identified as an aerospace engineer and a union president in the emails attached to Plaintiff's opposition. *Id.* at 23.

In seeking to dismiss this claim, Defendant argues that Plaintiff has not plausibly alleged that he and Kabbara were similarly situated, and Defendant represents that Kabbara (unlike Plaintiff) is a supervisor. Dkt. 65 at 14. Plaintiff's allegations are admittedly sparse with respect to Kabbara's conduct. But considering the complaint as a whole, drawing all reasonable inferences in Plaintiff's favor, and being mindful of his *pro se* status, the Court concludes that Plaintiff has alleged (and has provided supporting examples) that Kabbara frequently used his FAA email for union business, including messages related to union elections, and that the FAA declined to intervene even after some FAA employees complained about Kabbara's use of his email and FAA equipment for union purposes. It is possible that the alleged disparity in Plaintiff's and Kabbara's treatment can be explained by other factors, including their respective positions in the FAA, their roles in the union, or the nature of their communications. But at the pleading stage, Plaintiff has alleged sufficient "facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of his [national origin]," *Joyner*, 140 F.4th at 530, and Defendant will need to wait for the summary judgment stage to proffer any asserted, non-discriminatory rationale for any differential treatment.

Plaintiff also asserts a second basis to conclude that the strict prohibition on his use of FAA equipment or his FAA email for union activity was attributable to his national origin. As discussed above, Plaintiff denies that he sent the disputed emails from his FAA email and, instead, alleges that Kabbara altered emails sent from Plaintiff's personal email address to make them appear to have been sent from a work email. Dkt. 57 at 5–6 (2d Am. Compl. ¶ 19). Plaintiff also appears to allege that FAA leadership knew or had reason to believe that those

18

emails were, in fact, sent from his personal email. *Id.* at 6 (2d Am. Compl. ¶ 21) (alleging that

"FAA senior leadership and management" accessed Plaintiff's personal emails). Accepting

those allegations as true, one might argue that this fabrication supports an inference that the

FAA's stated rationale for issuing the Reprimand Letter was pretextual. The problem with this

argument, however, is two-fold. First, Plaintiff offers little, if any, basis for inferring that FAA

management participated in such an extraordinary deception merely then to caution Plaintiff not

to do something that they knew he was not doing (hence the fabrication). Second, and more to

the point, if the premise that Plaintiff did not use FAA resources to send these or other emails is

credited, the theory of adverse action set forth above is called into question. That is, if Plaintiff

used only his own computer and email address, and alleges no intent (and no basis to infer an

intent) to use his FAA email address for union-related activities in the future, the Court is left to

wonder what harm he incurred in being told to continue doing what he was already doing.[5]

While a close question, the Court concludes that Plaintiff has alleged enough—albeit just

barely enough—to permit a plausible inference that his treatment was discriminatory and that he

was denied a benefit that other, similarly situated employees (who were not Costa Rican

nationals) were granted. Much more will be needed if this case is to progress past the pleading

stage, but the Court will deny the motion to dismiss as to Plaintiff's claim that the Reprimand

Letter discriminated against him on the basis of his national origin.

---

[5] Although one might raise the same concern about Plaintiff's comparator argument, he is entitled to plead in the alternative and, thus, can plead that he did not send the email from his FAA email account or, if he did, he was told not to do so in the future. His fabrication theory, in contrast, cannot be saved based on a theory of pleading in the alternative; the entire theory turns on the premise that he did not send the email from his FAA account, which is a necessary predicate for the claim that FAA officials knew that the purported sender's email address was fabricated but still (falsely) accused him of sending the email from his FAA email account. Even as to the comparator argument, however, this tension in his position adds to the concern that his allegations barely clear the hurdle of plausibility.

b.    Retaliation

Plaintiff also alleges that the Reprimand Letter was retaliatory in violation of Title VII. *Id.* at 5 (2d Am. Compl. ¶ 17).  Under Title VII, employers are prohibited from "discriminat[ing]" against any employee because the employee has "opposed . . . an unlawful employment practice . . . [or] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute.  42 U.S.C. § 2000e-3(a); *see Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015) (same Title VII proscription on retaliation applies to federal agencies and private employers); *Barnes v. Costle*, 561 F.2d 983, 988 (D.C. Cir. 1977) (same).  To state a claim for retaliation, a plaintiff must plausibly allege that "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two," but she need not plead every element of the prima facie case in the complaint.  *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 200 (D.D.C. 2017) (first quoting *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003); and then citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).

Plaintiff's second amended complaint does not clearly identify the statutorily protected activity that he alleges prompted the Reprimand Letter.  Plaintiff refers to a 2016 EEO complaint, Dkt. 57 at 11 (2d Am. Compl. ¶ 33), but, as Defendant notes, that incident is too temporally attenuated to give rise to a plausible inference that the 2023 Reprimand Letter was retaliatory, Dkt. 65 at 15, and Plaintiff offers no alternative basis for inferring such a retaliatory intent.  In his opposition to the motion to dismiss, Plaintiff frames his retaliation claim as stemming from his September 19, 2022, meeting with Telfer to request a promotion.  Dkt. 71 at 7, 12–13.  But a request for a promotion, "which is not accompanied by an accusation or complaint of discrimination, does not constitute Title VII-protected activity." *Ngeudi v. Admin.*

20

*Off. of the U.S. Court*, No. 23-cv-2965, 2025 WL 4737712, at *3 (D.D.C. May 9, 2025); *see also Ferguson v. WMATA*, 630 F. Supp. 3d 96, 118 (D.D.C. 2022).

Moreover, even if Plaintiff had identified protected activity within sufficient temporal proximity to give rise to an inference of retaliation (without considering the intervening cause of the January 2023 email), the Reprimand Letter, which was not placed in Plaintiff's file and carried no consequences, would not constitute a materially adverse action for the purposes of Title VII retaliation.  *See Hyson v. Architect of the Capitol*, 802 F. Supp. 2d 84, 102 (D.D.C. 2011); *see also Bain*, 648 F. Supp. 3d at 57–58 (counseling letter retaliatory only if tied to a "tangible job consequence[]"); *Herbert v. Architect of the Capitol*, 766 F. Supp. 2d 59, 75 (D.D.C. 2011) (finding that a letter of reprimand describing the employee's failure to perform duties as directed and accusing the employee of unprofessional and discourteous conduct was not materially adverse).  Although Title VII's anti-discrimination provision applies to any harm concerning the terms and conditions of employment, even if only a modest or slight harm, *Muldrow*, 601 U.S. at 354–55, to state a claim for retaliation a plaintiff must allege that "the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm," *id.* at 357 (citation modified).  In other words, the adverse action must be of a type and degree that "would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Baloch*, 550 F.3d at 1198 (D.C. Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Plaintiff has not plausibly alleged that he experienced such consequences related to the Reprimand Letter or any corresponding restriction on his ability to use his FAA email (as opposed to his personal email) for union activity.

The Court will accordingly grant the motion to dismiss as to Plaintiff's Title VII retaliation claim.

21

2.  *Privacy Act*

In *Acon-Chen II*, the Court also permitted Plaintiff to include more detailed allegations in support of his Privacy Act claim in his amended complaint. *Acon-Chen II* at 19–20. His second amended complaint, however, includes no reference to the Privacy Act (and addresses privacy only in the context of the agency's alleged unlawful surveillance). *See generally* Dkt. 57 (2d Am. Compl.). Only in his opposition to the motion to dismiss does Plaintiff briefly contend that he administratively exhausted the Privacy Act claim discussed in *Acon-Chen II*. Dkt. 71 at 9–10. But even if the Court were to consider those allegations, *see Greer v. Bd. of Trs. of Univ. of D.C.*, 734 F. Supp. 3d 75, 85 (D.D.C. 2024) ("It is unclear, however, whether our Circuit requires district courts to consider new *claims* (as well as new facts) articulated in a *pro se* opposition to a motion to dismiss." (first emphasis in original)), Plaintiff's only argument is that he administratively exhausted his Privacy Act claims by making FOIA requests for the records at issue, Dkt. 71 at 9–10. He does not allege that he "submit[ted] a Privacy Act request to the agency and [sought] review within the agency under the agency's regulations" as required. *Mulhern v. Gates*, 525 F. Supp. 2d 174, 183 (D.D.C. 2007).

Even more belatedly, in his reply in support of his third motion for reconsideration of the Court's decision in *Acon-Chen II*, Plaintiff adds slightly more detail concerning his purported exhaustion of the Privacy Act claim. Dkt. 78 at 9. That eleventh-hour filing, which stretches the Court's tolerance for *pro se* litigants to (and past) its breaking point, is equally unavailing. Plaintiff first erroneously claims that a *pro se* litigant need not exhaust a Privacy Act claim, or at least that a FOIA request is "sufficient to satisfy the spirit of the exhaustion requirement." *Id.* Neither of the cases that Plaintiff cites in support of those novel propositions, however, says any such thing. In both cases, *Barouch v. U.S. Department of Justice*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013), and *Sandoval v. U.S. Department of Justice*, 296 F. Supp. 3d 1, 12 (D.D.C.

2017), the Court held that the exhaustion requirement must be strictly enforced. To be sure, *Barouch* and *Sandoval* held that the Privacy Act exhaustion requirement is jurisdictional, while the undersigned has concluded that the "requirement is non-jurisdictional." *Bain*, 648 F. Supp. 3d at 42; *accord Jensen v. Dep't of the Navy*, No. 25-cv-1908, 2026 WL 508002, at *3 (D.D.C. Feb. 24, 2026). But that does not relieve Plaintiff of the obligation to allege a violation of the Privacy Act, and "the text of the statute and [D.C. Circuit precedent] make clear that administrative exhaustion is an element of the Privacy Act's record-amendment cause of action." *Bain*, 648 F. Supp. 3d at 42 (citing *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990)).

Finally, although Plaintiff's reply and the attached exhibits discuss a FOIA request made to the FAA and a report sent to the Department of Transportation Office of Inspector General, *see generally* Dkt. 78, he nowhere alleges that he submitted the required Privacy Act "request in writing addressed to the [record] system manager" for the records at issue, or that the FAA (or Department of Transportation) formally refused such a qualifying request, as the Court previously explained would be required. *Acon-Chen II* at 16 (alteration in original) (quoting 49 C.F.R. § 10.31).

The Court will therefore grant the motion to dismiss insofar as Plaintiff raises a claim under the Privacy Act.

### 3.    *Other Claims*

Although Plaintiff's opposition to the motion to dismiss argues only that the second amended complaint "state[s] plausible claims for discrimination, retaliation, hostile work environment, and violations of the Privacy Act," Dkt. 71 at 1, all of which the Court has addressed, the second amended complaint and Plaintiff's other filings occasionally gesture at other legal theories as well. Those include asserted violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA") and the Fourth and Fifth

23

Amendments. *See* Dkt. 57 at 6–7 (2d Am. Compl. ¶ 21); Dkt. 71 at 9. The Court will dismiss any asserted constitutional claim for the same reasons discussed above concerning Plaintiff's motions for reconsideration. Moreover, insofar as Plaintiff asserts that Defendant's access to his personal emails violated the ECPA or the SCA, the Court will also dismiss those claims. Plaintiff's references to those statutes are wholly perfunctory and do not identify any specific cause of action or theory of relief under those statutes. *See Iqbal*, 556 U.S. at 678. To the extent that Plaintiff's claims under those statutes rest on the premise that Defendant conducted some (entirely unspecified) illegal surveillance of his personal emails, *see* Dkt. 71 at 9, that allegation is unsupported and implausible; Plaintiff provides no supporting factual allegations and, to the contrary, concedes that the relevant emails were sent (in one form or another) to FAA official email addresses and then forwarded to FAA leadership.

## C.    Leave to Amend

Plaintiff's third motion seeking reconsideration of *Acon-Chen II* also includes a request that the Court grant him leave to file a (longer) third amended complaint. Dkt. 69 at 12. The Court will deny this request as procedurally improper. As explained in the Court's standing order, "[a]ny amended or proposed amended pleadings or other filings must be accompanied by a redline comparison between the original and the amended filing or proposed amended filing." Dkt. 3 at 3. If Plaintiff wishes to file a third amended complaint in this action, he must therefore file a motion seeking leave to do so, attaching a redlined copy of his proposed filing, and he must give Defendant an opportunity either to consent or to object to the filing of yet another amended complaint. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff is cautioned, however, that the Court is unlikely to look favorably on a motion to file an amended complaint that seeks to re-assert claims that Plaintiff has already had several opportunities to present and that have been addressed by multiple opinions of the Court.

24

## CONCLUSION

For the foregoing reasons, Plaintiff's motions for reconsideration, Dkt. 58; Dkt. 59; Dkt. 69, are hereby **DENIED** and Defendant's motion to dismiss, Dkt. 65, is hereby **GRANTED** in part and **DENIED** in part.

  **SO ORDERED**.

         /s/ Randolph D. Moss
         RANDOLPH D. MOSS
         United States District Judge


Date: July 10, 2026